Bill Suzanne Medley Good morning, would you like to reserve some time for rebuttal? Yes, Your Honor. Three minutes. Three minutes. All right. May it please the Court. This case is an automatic stay case, and the Court has had much to say about the automatic stay within the last two years, and this case is a contempt case, and the Court has also had much to say about contempt in the last two years, but I also feel that this is a and I don't want to, I'm not representing that I'm Erwin Chemerinsky, but procedural due process, no deprivation of property without due process of law, and Bankruptcy Rule 7001 paragraph 2 directly embraces that idea, because it says that a proceeding to determine the validity or extent or the existence, frankly, of a property interest is an adversary proceeding. Let me ask you, I know your firm didn't represent this client at trial, but where in the record will we find a place where your client, your predecessor counsel, demanded an adversary proceeding? I don't think that's in the record. I don't think it was demanded, but I think this was a one-sided proceeding from the start, and I say that because Well, but how many pretrial conferences were there? There were several. Okay. Yes. Did somebody tell your client you may not show up? Sorry, we're going to do this without you. I don't think so. I'm sorry. Did someone tell your client you may not show up to those? I'm sorry. No. Okay. So your client participated, right? He did participate, but the OSC was written in a very unusual way in terms of deciding what the property interest was. That is the crux of this case, whether there's a property interest or whether it was a loan, or even just a claim. And so the OSC, what I was going to say is, if it was an adversary proceeding, under Rule A, there would be a short and plain sentence. Was there any doubt in the world that the question was, was this thing a sale or something  Well, I don't know whether it was. Wasn't that the issue throughout this? I realize what you're saying about Rule 7001, but Judge Ferris asked, and you answered, thank you, candidly, that no, nobody demanded an AP. There was discussion about that. The judge joined the discussion about that. But nobody ever demanded one. So I mean, I want to take procedural due process as seriously as you do, but your client fully participated in this. The issue from day one was, what was this transaction? Nobody was misled about that, right? I don't think it's waivable that you could waive This is jurisdictional. This is a jurisdictional issue in your mind? I don't know if it's a jurisdictional issue. Well, what is it if it's not waivable? How is it not jurisdictional? Is there some medium place between jurisdictional and not waivable? Perhaps it is jurisdictional. I don't think you can waive the right to a proceeding where it's laid out in detail. This is my claim for relief. Here are the facts that set out my claim for relief.  All you have is a claim. And that was never done because the OSC... But the distinction I'll raise, and I'm sorry to interrupt you so often, the distinction I'll raise is, if it's jurisdictional, the court had no power to do it. And if you're arguing that, that's a very, fairly severe thing to say. And that was not exactly the argument that I read in the brief. The other question it's going to lead to eventually is, well, where is the prejudice? There were numerous hearings about this. You know, nobody, other than some difficulty in adhering to the court's orders, it's not as if discovery was limited, as far as I know. And it's not as if that other procedures that would have gotten to the correct answer here weren't followed. So that's my problem with... I mean, I thoroughly respect what you're saying. There is a rule that says you should do this by AP. But unless that's jurisdictional, I don't see where your client really was disadvantaged by the way this came to trial. Well, I think the OSC, which I know you reviewed, because it's the first thing in the answers, it's based on an assumption that the appellant has no property rights. And the OSC is basically written to say, prove to me why you shouldn't be sanctioned for believing that you have a property interest. Well, let me turn that around. No, I'm sorry. You go ahead. I was going to say that. Are you attacking the idea of starting by an OSC as opposed to a complaint that somehow the use of an OSC was itself a violation of procedural due process? I believe it is, because I think... Is that always the case? Or is there something about this one? Because OSCs are used not just in bankruptcy, but throughout state and federal courts. Are you saying that somehow there's something inherently wrong with an OSC? Or is there something wrong with it in this case? I think it's wrong in this case. Why is that? Because it's substituting the requirement for short and plain notice of a claim for relief. The proper claim for relief is an adversary, a declaratory relief action, or an action to recharacterize a prepetition transaction. Let me ask it a little different way. If the complaint had said exactly what the OSC said, or maybe not exactly, that's probably wrong, but if it laid out in substance the same allegations that the OSC had, wouldn't that have been sufficient as a complaint? Well, in substance, when you say in substance, the assumption that there is a property recharacterization cause of action, and this is a property... A complaint would have said that, right? Correct, it would be... If it had been started in that fashion, the complaint would have, I think, would have said essentially the same kinds of things as the OSC. Do you disagree with that? I think it would include what the OSC said, but it wouldn't just be what the OSC said, because the OSC skipped over the prepetition characterization. I think that the appellant was entitled to short and plain notice of what the issues were being litigated, and that wasn't done here. It was simply, you had no right to ever believe that you had a property interest... Let me interrupt you. Wasn't it... It's not that there was no property interest, is it? I mean, your client said on the witness stand, okay, I'm a secured creditor, and nobody seems to be arguing that at the worst they're that. The question is, well, if they were a secured creditor, why didn't they ask for relief from stay before they haul off and do some self-help? Isn't that really the issue here? And by the way, on the recharacterization, I have a very hard time with that concept, because the document from which all this emanates says many different things. It is not unambiguously a sale from that, and I think that's exactly what everybody was struggling with, is what do we do with that? So the idea that the default is this has to be a sale to me is completely wrong. But, you know, you don't have to react to that now. You can react to that later. But, I mean, isn't it true that everybody acknowledged that, okay, you probably are a secured creditor here, and you say you are, and nobody says you weren't. But the problem is you didn't act like one in a bankruptcy. You didn't ask for relief to go do the thing you thought you were entitled to do. Isn't that what this is? I'm going to try to remember all that. It shouldn't be hard. So relief from stay. I thought about this, because that's the first thing they said in the answering brief. Why didn't you bring relief from stay motion? And I can't for the life of me, and maybe I'm just not clever enough to figure out what that relief from stay motion would look like. Motion for relief from stay, judge, to go back to state court to get a state court injunction against the debtor in bankruptcy as quasi chapter 13 trustee using what she thinks is her property and really isn't. I can't see a bankruptcy judge granting that. I wouldn't have phrased it that way, but I'm not your lawyer. Or, you know, motion for relief from stay to inform the debtor that she doesn't really own the receivable. How about a motion for a determination that a stay doesn't apply because this is really our property, not theirs? But I think that since Fulton, there is no affirmative duty to do that anymore, because Fulton says that, you know. Fulton says if you own the thing and you have it, you have the right to that status quo. That's what Fulton says. Well, in City of Chicago v. Fulton, they impounded the car, they towed it away. I thoroughly understand. It wasn't theirs. I thoroughly understand that. And the question is, what's the status quo? That's what Fulton's about. And, counsel, all the ways you described the motion for relief from stay, if your client had gone in and asked for it, all talked about everything you just said there talked about asking or doing something against the debtor. I mean, even if you were asking for it as you were describing, that would require relief from stay. I mean, what the secured creditor wanted to do here was go after the debtor, go after the property. But every time you mentioned, you'd be going after the debtor as well. Well, the debtor was trying to take away the property. And this happened in a very short series of events. I mean, the lender on the real property that she was trying to save had a hearing on relief from stay on June 10th. And on May 28th, the debtor filed a declaration under penalty of perjury saying, I have a receivable coming. I'm going to use it to pay this, that, and the other. And that rightfully alarmed our client to say, you're about to make off with our property. Maybe I didn't say it very clearly. But if your client was going to take action against the debtor, to restrain the debtor, wouldn't you have needed relief from stay to do that? I don't think that our client ever intended to go after the debtor. But you said you wanted to enjoin that basically what he wanted to do was enjoin the debtor from doing something. He wanted to, yeah, he wanted to enjoin the property from being taken away. You'd mentioned that he wanted to enjoin the debtor from taking the property away. But that is a change in the status quo, as I was having a discussion with Judge Lafferty and Judge Ferris. The status quo on the petition date was that she assigned the receivable to PBC pre-petition. It was she who tried to change the status quo. You're just assuming the answer there. Well, the difference between this, one of the differences between this case and Fulton is the City of Chicago never wrote a letter to Mr. Fulton, I think it was. Your client wrote a letter, communicated with the debtor saying, give me this money. I disagree with that because what was communicated was essentially, stop, thief. Don't take my receivable. That's a different way of saying the same thing, right? I don't, well, and I thought about this. Still a communication with the debtor telling the debtor to do or not do something. It was, yes, to preserve the status quo. It was in furtherance and reliance on the status quo. PBC was the owner of the receivable. It was her affirmative duty to change the status quo by seeking a declaratory judgment that it was her property, not PBC's property. But who, whether it owned the receivable or not, was exactly the issue the Bankruptcy Court had to decide. And it was not, I mean, that was the whole point of this. And let me just finish because I have two other quick points. You cannot look at the document and say unambiguously this is a sale and nothing else. You just can't do it. I'm very sympathetic to the fact that someone in your client's position is running different kinds of risks and they'd rather not have them or they'd rather ameliorate them. So, I mean, I get that. But at some point he admits, I'm a secured creditor. And I'm a secured creditor when the receivable is no longer there for me to collect. I can exercise some other remedies. That's all fine, okay? What I think Fulton is about is simply a leverage question. In a situation where somebody has pursuant to state law taken something and they're holding it as their collateral, is it on them to have to give it back? And the answer is no. That's not what the automatic, the automatic state preserves a status quo. And in my mind those are just two very different things. And the idea that the default is you bought this thing, that had to be determined. That had to be determined by the Bankruptcy Court. So I just, I can't see this as a recharacterization in the typical way where, you know, an insider loans the debtor a million dollars before a bankruptcy and says it's a note. And everybody else says it may look like a note, but it isn't really one. That's recharacterization. That's not what this is. Well, if it was ambiguous, then there was a fair ground of doubt about it as well. So if it had to be determined by a court. Well, the fair ground of doubt is did he have a right to haul off and write a letter to somebody. That's where the ambiguity would lie or not. Well, and I would point the court to Senso V. Nures where you just decided. Yeah, I understand. That you can take an action in defense of the status quo, and that is not a violation of the automatic status quo. Well, the problem is the default would be I'm a secured creditor, and secured creditors don't get to do that. That's all there is to it in my mind. I don't know if I have any more time for it. Well, okay. We've taken you inside your three minutes, so if you want to reserve. But it's been a very lively argument. Thank you. Yes, I appreciate it. Okay, let's see. Do we have Mr. Wilson on the video? Yes, I'm here, Your Honor. Okay. There we are. Okay, good. Thank you. Go ahead. And let me also say that I think the normal protocol would be even if you're on video, you should be wearing a jacket. I'll just point that out to you for future reference. So please go ahead. I can throw one on if you'd like. Why don't you just go ahead and make your argument. Yeah, I'm sorry, Your Honor. First, I don't really understand why we're here today. I mean, I've looked through both our brief and the appellant's or their response to that. This transaction was a loan. What evidence was there of that? There's a proof of claim filed by the creditor. There was an attempt to collect by the creditor. He contacted the debtor directly in violation of the automatic stay. He even threatened her with criminal action in this proceeding. Subsequent to that, he later filed a civil lawsuit in San Diego Superior Court, claiming he's a creditor and trying to collect against the debtor directly. The wording of the agreement indicates they're a secured creditor. That's further evidence of the fact it was a loan. With respect to proceeding through adversary or a contempt proceeding, my research indicated I could do either of those methods, and that was discussed thoroughly before Judge Yoon multiple times, and there was no objection that was ever filed on that issue. In this matter, the creditor was given the full opportunity to defend itself as to that issue or make it an issue before the court to try and change it to an adversary, and they never did so. That's all I really have to say, Your Honor. Let me ask you about the remedy, because Judge Yoon kind of talked about multiple possible bases for the sanction he picked, and some of those I think are troublesome. For example, would you agree that the judge mentioned this is a coercive kind of sanction that the creditor could purge its contempt by paying $20,000. Does that strike you as being really an appropriate coercive contempt sanction? I don't know, Your Honor, in all honesty. Okay. He also talked about, at quite a bit of length, about wanting to punish this creditor-slash-claimant for what it did. Do you see a problem with the bankruptcy court granting a purely punitive award in this amount? I don't think so. That's up to the judge and then this appellate panel to decide if that was or not. Okay, well, I'll point out to you there's a Ninth Circuit case called Dyer that said that the bankruptcy court in a civil contempt proceeding can only grant at most a, I forget what the exact words are, relatively modest punitive sanction, and there's a reference to $5,000 in 1999 dollars, and I've done the math, that would be about $9,000 today. That's not really a question, that's a statement. I think if this is a purely punitive sanction, there's a problem with it. Well, that amount seems reasonable. The judge didn't award a significantly higher amount than that, and he did find the creditor's conduct really objectionable in this case throughout it, and I know the record shows that. Well, notwithstanding my questioning of Mr. Iskander, let me take a side of this for a second, okay? The document, the generating document here speaks in terms of a receivable, but it clearly also gives a buyer rights as if they were a secure creditor, and you can certainly understand why. I mean, this is a somewhat risky business, although the escrow may be ready to close until a dozen somebody gets paid, there is some risk. And one way to look at this, and I think the point of some of the articles that were cited, is that you can kind of wear two hats here. You can have purchased something, but if the sale falls through, as a default, you shouldn't be without a remedy. You should be able to collect in some other fashion, including calling yourself a secure creditor, which, you know, the gentleman did on the witness stand. So, I mean, it seems to me this is, and the UCC Article 9 also indicates fairly clearly that even if you are a purchaser of these things, you're still supposed to act like a secure creditor. You're still supposed to perfect an interest. So it seems to me that, you know, isn't there a fair ground of doubt here as to what this interest was? And if that's the case, then are we really talking about contempt? If this is as murky as it might be, both from the document itself and the way the law appears to treat this, I mean, is this really a contempt situation? I think it is, you know, that if it is a secured creditor, if they are a secured creditor, then they should have proceeded with motion for relief from state to take the actions they did. They didn't do that. But I understand your point. Well, my point is that if you're not really sure what your status is, should you really behave with a contempt citation? I mean, I realize that at the end, I mean, it's a little cart before the horse. At the end of the day, I do think the bankruptcy court needed to figure out, was this thing a sale or was it something else? And I think that question was pertinent throughout. But if that is as unclear as I think it, you know, it might be in some circumstances, is contempt really the appropriate remedy here, I guess is my question. Well, our research indicated that you could proceed through adversary. No, that's not my question. Is this a contemptible kind of offense if it's as murky as I think someone might argue that it is? Well, that's up to you, Your Honor. It's not for me to speak on that. Sure. I mean, I would say it's a contempt action based upon what happened here and all the conduct by the creditor that occurred. It was fairly atrocious. It was, you know, it could be considered contempt. But that's the court's decision. It's up to Judge Yoon on that issue as well as you on appeal. Let me ask you this. Suppose you had lost on the question of whether this was a sale as opposed to a secure transaction, and the court had decided that, yes, indeed, Precision did own this receivable. Would that have spiked your case? Would you still have a claim for violation of the automatic stay anyway? If it's you're saying it was deemed a national sale? Right, right. Would that change my opinion on this? Yes, I think it would. But, on the other hand, you know, you look to the document itself and how the creditor acted within this case. You know, they were a secured creditor, and they should have gotten relief from stay if they wanted to proceed the way they should have. Okay. All right. Did that answer your question, Your Honor? Maybe as well as it can be answered. All right. Any other questions? No, thank you very much. Okay, we have no more questions for you, so if you want to stop, that's fine with us. Yeah, that's fine. Okay. All right, Mr. Iskander, I think we kind of talked over you for a while, so I'm going to exercise my prerogative in the center chair here and give you two extra minutes. Thank you, Your Honor. There was reference to the proof of claim that was filed. I should point out, and this is at ER 10573, that Mr. Wilson sent PBC, who was in PROPER at that time, an email that said, we're in Chapter 13, you're going to lose all your rights, you have to file a proof of claim. And that was an obvious trap. And he did that because, and I don't want to put words in his mouth, but this was a way to try to recharacterize the property interest into a claim. Because you're going to lose your rights, you're in PROPER, you have to do what I say. So that's in the record. Another thing I want to say is that the court, straight out of the gate, back in August of 2020, told my client, for purposes of bankruptcy, a factor is always a lender. You'll always have a claim. And he said it's established bankruptcy law for the last 50 years, that a factor is always a creditor. And so he basically told my client that no matter what happened in this case, he would lose. And it encouraged counsel on the other side to run up fees carte blanche. And we objected to every single fee that was charged. And some of them were abusive. Some of them were printing and downloading documents, going to the post office, calling the courtroom deputy. 0.25, 0.5, and 0.25 increments. And those were all abusive, and Judge Yoon did not rule on those. He said, I was going to punish anyway, so it doesn't really matter. And I think that's important. And I would say also that this idea that a factor is always a lender under bankruptcy law is incorrect. Butner says that there is no bankruptcy common law on property rights. You look to state law unless there is a countervailing federal interest. And Judge Yoon, in his oral ruling, cited a PACA case, which is the Butner exception. And that's when there's a countervailing federal interest, is when a federal statute says, and in the S&H packing, the Ninth Circuit said, we are commanded by Congress to view the transaction in this way because of PACA. So there was no bankruptcy common law. Is that really different from the Article 9 view on what's a sale versus what's a secure transaction? I mean, the PACA view versus the Article 9 difference, is there really any daylight between those views? I don't think we ever got there. And another thing I want to say is Golden Plan says, look at all the facts and circumstances. And Judge Yoon didn't do that. He said, I don't care what happened pre-petition. I don't care what happened post-petition. I don't care what happened post-dismissal. I only care about what happened when the automatic stay was in place. It was very limited inquiry into the facts and circumstances of the case, which really prejudiced our claim. I've got no more questions. Anybody? I'm all set. Okay. Thank you very much. Thank you. Thank you, Your Honor. All right. Thanks, both sides, for your arguments. Interesting case. The matter is under submission, and it will provide a written decision. Thank you.
judges: FARRIS, LAFFERTY, CORBIT